**COMMONWEALTH of Pennsylvania, by Thomas W. CORBETT, Jr., Attorney General, Plaintiff**

v.

**CITIZENS ALLIANCE FOR BETTER NEIGHBORHOODS, INC., A Nonprofit Corp., Vincent J. Fumo, Individually, Ruth A. Arnao, Individually, Joseph A. Russo, Individually, John J. Sfrisi, Individually, Albert Mezzaroba, Individually, Jeffrey R. Travelina, Individually, John P. Travelina, Individually, Amel Hammad, Individually, Christian A. Dicicco, Individually, Todd L. Baritz, Individually, Patricia A. Evers, Individually, Kenneth L. Baritz, Individually, and Reverend Gary T. Pacitti, Individually, Defendants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 26, 2009.

Decided Nov. 10, 2009.

Publication Ordered Nov. 23, 2009.

Mark A. Pacella, Harrisburg, for plaintiff.

Kevin J. Kotch, Philadelphia, for defendant, Vincent Fumo.

OPINION by Judge PELLEGRINI.

Vincent J. Fumo[1] (Fumo) has filed preliminary objections pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(1), (a)(4), (a)(5) and (a)(8)[2] seeking the dis-

---

1. Most of the other defendants have informed the Court that they have reached tentative settlements with the Attorney General.

2. Pennsylvania Rule of Civil Procedure 1028 provides, in relevant part:

(a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

(1) lack of jurisdiction over the subject matter of the action or the person of the

missal of the complaint in equity brought by Attorney General Thomas W. Corbett, Jr. (Attorney General) alleging that Fumo breached a fiduciary duty to Citizens Alliance for Better Neighborhoods (Citizens),[3] a domestic, non-profit corporation created for charitable purposes.

The petition for review alleges that Fumo is a former Pennsylvania state senator who founded Citizens, a non-profit corporation organized on a non-stock, no-member basis with the stated purpose of promoting public health, housing, safety and education in Philadelphia. While Fumo never was an officer or director of Citizens and never had any formal role with the corporation, the petition alleges that Fumo was the power behind Citizens and that he controlled and dominated Citizens, its board of directors and its officers to the extent that it operated as his alter ego, agent and instrumentality. The petition further alleges that Fumo used Citizens to unlawfully advance his personal convenience, enrichment and political advantage through various expenditures that benefitted Fumo, including providing vehicles and office space and funding political activities totaling approximately $1,900,000. It also alleges that he directed Citizens to invest $9,000,000 with a financial advisor causing a loss of $1,400,000. Fumo was convicted on federal fraud charges for receiving non-profit funds and has been ordered to pay as part of his criminal penalty some of the funds that he received.

■ In his preliminary objections, Fumo contends that:

(1) the Attorney General lacks standing to bring a *parens patriae* action against him for his activities with regard to Citizens, a non-profit, charitable corporation;

(2) the Attorney General is barred by the statute of limitations from bringing this action; and

(3) he cannot be liable for a breach of fiduciary duty against Citizens because he was neither an officer, director, nor employee of the corporation.[4]

## I.

■ With regard to Fumo's first contention, it is the well-settled law of the Commonwealth that the Attorney General is responsible for the public supervision of charities through his *parens patriae* powers. *In re Milton Hershey School Trust,* 807 A.2d 324 (Pa.Cmwlth.2002); *In re Estate of Coleman,* 456 Pa. 163, 317 A.2d 631 (1974). The Commonwealth has *parens patriae* standing whenever it asserts quasi-sovereign interests, which are interests that the Commonwealth has in the well-being of its populace. *Commonwealth v. TAP Pharmaceutical Products, Inc.,* 885 A.2d 1127 (Pa.Cmwlth.2005). Here, the Commonwealth's interest in the well-being

---

defendant, improper venue or improper form or service of a writ of summons or a complaint;

\* \* \*

(4) legal insufficiency of a pleading (demurrer);

(5) lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action;

\* \* \*

(8) full, complete and adequate non-statutory remedy at law.

**3.** Count II of the complaint in equity, the only count that applies to Fumo, is captioned "Surcharge," but it is clear that the true cause of action is breach of a fiduciary duty.

**4.** In reviewing preliminary objections, all material facts averred in the complaint and all reasonable inferences that can be drawn from them are admitted as true. *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983); *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 914 A.2d 477 (Pa.Cmwlth.2007).

of the public that Citizens was created to serve is a clear example of such a quasi-sovereign interest. In fact, *"in every proceeding which affects a charitable trust,* whether the action concerns invalidation, administration, termination or enforcement, the attorney general *must* be made a party of record because the public as the real party in interest in the trust is otherwise not properly represented." *In re Pruner's Estate,* 390 Pa. 529, 532–33, 136 A.2d 107, 110 (1957) (emphasis added). It is the duty of the Attorney General to ensure that the purpose of the charity remains charitable. Consequently, the Attorney General always has standing in any case involving a charity. *See In re Milton Hershey School,* 867 A.2d 674, 685 (Pa. Cmwlth.2005) (reversed on other grounds). Thus, the Attorney General does have *parens patriae* standing to investigate the activities of Fumo as they relate to Citizens, a charitable, non-profit corporation.

## II.

Fumo next asserts that even if the Attorney General has standing, the statute of limitations has run, rendering any claim time-barred. Fumo contends that the statute of limitations began to run in February 2007, when the superseding indictment in Fumo's federal criminal case was issued, thereby putting the Commonwealth on notice of the alleged bad acts upon which the current case is based. Despite this knowledge, the Attorney General waited until April 2009, more than two years after the superseding indictment, to file the instant action.

■■■ Fumo is correct that a claim of breach of a fiduciary duty is subject to a two-year statute of limitations. Section 5524(7) of the Judicial Code, 42 Pa.C.S. § 5524(7).[5] However, according to the doctrine of *nullum tempus occurrit reipublicae,* meaning "time does not run against the republic," the Commonwealth is exempt from statutes of limitations. "The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes." *Department of Transportation v. J.W. Bishop & Company,* 497 Pa. 58, 64, 439 A.2d 101, 103 (1981) (quoting *United States v. State of California,* 332 U.S. 19, 39–40, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947)). This common law doctrine has its roots in the prerogative of the Crown and has never been abolished. Its purpose is to vindicate public rights and to protect public property, and this purpose outweighs any inconvenience experienced by a defendant. *J.W. Bishop,* 497 Pa. at 58, 439 A.2d at 101; *see also Township of Indiana v. Acquisitions & Mergers, Inc.,* 770 A.2d 364 (Pa.Cmwlth.2001). Thus, even though more than two years passed from when the Attorney General was put on notice of Fumo's wrongdoing until the complaint was brought, it is not time-barred.[6]

---

**5.** Section 5524(7) of the Judicial Code provides:

> The following actions and proceedings must be commenced within two years:
> * * *
> (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an

action or proceeding subject to another limitation specified in this subchapter.

Breach of fiduciary duty is considered a species of fraud for purposes of the statute of limitations. *Koken v. Colonial Assurance Company,* 885 A.2d 1078 (Pa.Cmwlth.2005).

**6.** Fumo also contends that even if *nullum tempus occurrit reipublicae* prevents statutes of limitations from barring an action by the Commonwealth, it should not apply in this case because Citizens is the real party in

■ That does not mean that the Attorney General can bring the action forever because the equitable doctrine of laches would apply.

Laches applies when a defendant is so prejudiced by the passage of time and inexcusable delay that it would be unjust to allow the plaintiff to assert a claim. Although statutes of limitation do not apply to the Commonwealth, laches may be imputed to the Commonwealth.... [However,] to impute laches against the Commonwealth, a stronger case of delay or acquiescence is necessary than when a mere private right is involved, and laches is only imputed to the Commonwealth in rare cases.

*St. Clair Area School District Board of Education v. E.I. Associates,* 733 A.2d 677, 681 (Pa.Cmwlth.1999).

### III.

Finally, Fumo contends that he cannot have breached a fiduciary duty to Citizens because he had no formal relationship with the corporation. He argues that the laws regarding fiduciary duties to corporations only cover officers, directors and the like, not "third-parties" like himself. As he was a stranger to Citizens, he had no fiduciary duty that he could have breached.

The Attorney General relies on Sections 5712 and 5547(a) of the Nonprofit Corporation Law [7] for the proposition that Fumo

interest. However, as detailed above, the Commonwealth brought this action under its *parens patriae* standing to protect the public, not to assert Citizens' rights.

7. Section 5712 of the Nonprofit Corporation Law, 15 Pa.C.S. § 5712, provides:
(a) **Directors.**—A director of a non-profit corporation shall stand in a fiduciary relation to the corporation and shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:
(1) One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.
(2) Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.
(3) A committee of the board upon which he does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the

director reasonably believes to merit confidence.
(b) **Effect of actual knowledge.**—A director shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause his reliance to be unwarranted.
(c) **Officers.**—Except as otherwise provided in the bylaws, an officer shall perform his duties as an officer in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. A person who so performs his duties shall not be liable by reason of having been an officer of the corporation.
Section 5547(a) of the Nonprofit Corporations Law, 15 Pa.C.S. § 5547(a), provides:
(a) **General rule.**—Every non-profit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles. The board of directors or other body of the corporation shall, as trustees of such property, be held to the same degree of responsibility and accountability as if not incorporated, unless a less degree or a particular degree of responsibility and accountability is prescribed in the trust instrument, or unless the board of directors or such other

did owe a fiduciary duty to Citizens. Section 5712 provides that directors and officers of a corporation owe it a fiduciary duty, and Section 5547(a) provides that a charitable corporation may hold property in trust, and that the board of directors or other body of the corporation are held to the same degree of responsibility and accountability over that property as if not incorporated.

Neither Section 5712 nor Section 5547(a) contains any explicit language creating a fiduciary duty in a non-director, non-officer such as Fumo. The Attorney General cites several cases that he contends stand for the proposition that when a person exercises a high level of control and domination over a corporation, that person is, in essence, a *de facto* director or officer and is held to the same fiduciary duties as a named director or officer. However, an examination of these cases shows that none of them deal with the situation presently before the Court—namely, whether a person with no official relationship to a corporation owes it a fiduciary duty due to indirect, yet absolute, control over it.[8] Rather, they are basic "piercing the corporate veil" cases holding that a person or entity that is a director, officer, controlling shareholder or, in one case, a county that created a corporation and staffed its board of directors with the county commissioners, has a fiduciary duty to the corporation. None of the cases cited by the Attor-

ney General nor any Pennsylvania cases discovered by this Court deal with whether a person who exerts a strong influence over the people who actually run the corporation owes a fiduciary duty to the corporation or whether the provisions of Sections 5712 and 5547(a) apply to *de facto* directors or officers.

■ The New York federal courts have articulated a standard that is helpful in providing insight into the issue of the duties owed by *de facto* directors and officers to a corporation. These cases call such *de facto* directors and officers "control persons," and they "owe exacting fiduciary duties to the controlled corporation. Control persons are not limited to officers and directors of the corporation but, rather, are those persons who exercise *de facto* control of the corporation during the relevant times." *Banco De Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F.Supp. 1302, 1306 (S.D.N.Y.1989). The test for such *de facto* control is if that person controls the entity's "day-to-day financial, personnel and business operations." *In re Grumman Olson Industries, Inc.*, 329 B.R. 411, 428 (Bkrtcy.S.D.N.Y.2005). This requires "a strong showing that the [control person] assumed actual, participatory, total control of the [controlled corporation]. Merely taking an active part in the management of the [controlled] corporation does not automatically constitute control." *National*

---

body remain under the control of the members of the corporation or third persons who retain the right to direct, and do direct, the actions of the board or other body as to the use of the trust property from time to time.

8. The cases relied on by the Attorney General are: *Village at Camelback Property Owners Association, Inc. v. Carr*, 371 Pa.Super. 452, 538 A.2d 528 (1988) (person owing a fiduciary duty is corporate officer); *City of Philadelphia v. Penn Plastering Corp.*, 434 Pa. 122, 253 A.2d 247 (1969) (person owing a fiduciary

duty is corporate officer and director); *Great Oak Building & Loan Association v. Rosenheim*, 341 Pa. 132, 19 A.2d 95 (1941) (person owing a fiduciary duty owned almost all of the corporation's stock); and *Lycoming County Nursing Home Association, Inc. v. Department of Labor and Industry, Prevailing Wage Appeal Board*, 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993) (entity owing a fiduciary duty is county where county created corporation and all of corporation's directors were county commissioners).

*Westminster Bank USA v. Century Healthcare*, 885 F.Supp. 601, 603 (S.D.N.Y. 1995). New York courts have found such control primarily in situations in which the person owns all or most of the controlled corporation's stock, either personally or through an agent, and in bankruptcies when a creditor assumes total control of a debtor corporation. While we adopt that a "control person" has a fiduciary duty if that person dominates the affairs of the corporation, there is a difference here in that Citizens is organized as a non-stock, no member non-profit corporation.

■ Pennsylvania law provides three methods by which non-profit corporations may be organized. First, a non-profit corporation may be organized on a stock-share option basis.[9] Under that model, the stockholders appoint the board of directors and, just as in a for-profit corporation, this type of non-profit corporation could be subject to a "control person" who illegally assumes functions of the Board of Directors to control the corporation and would similarly assume a fiduciary status to the corporation. The second way to organize a non-profit corporation is on a non-stock basis with members.[10] If member(s) exerted a substantial influence on the corporation's affairs to impermissibly vitiate control of the Board of Directors, those member(s) would be "control person(s)" who owe a fiduciary duty to the corporation.

■ The third way to organize a non-profit corporation—the way chosen by Citizens—is on a non-stock, no member basis.[11] In this type of non-profit corporation, all formal control is with the directors themselves. If a party other than the directors has actual, *de facto* control over such a corporation, that party, being a legal stranger to the corporation, would owe no fiduciary duty to the corporation under the "control person" analysis. Because it would be anomalous to hold that a person who asserts absolute *de facto* control over a non-profit charitable corporation owes no fiduciary duty to the corporation just because it is organized on a non-profit, non-stock, no member basis, we extend the "control person" analysis to cover individuals that dominate the affairs of such a corporation and hold that they have a fiduciary duty to the corporation.

■ All that the Attorney General has pled to make out his cause of action that Fumo is a *de facto* fiduciary is in paragraph 38 of the complaint where he pled legal conclusions that Fumo controlled and dominated Citizens to such an extent that it operated as his alter ego, agent and instrumentality in causing Citizens to take various actions benefitting him. The complaint is devoid of facts showing how Fumo allegedly accomplished this control and domination. Because the Attorney General failed to plead sufficient facts, we will dismiss the complaint but allow him to amend to plead facts to make out a cause of action that Fumo exercised control and domination over the corporation.

## ORDER

AND NOW, this 10th day of *November,* 2009, the preliminary objections of Defendant Vincent J. Fumo are GRANTED and the case is DISMISSED as to Defendant Fumo only, but the Attorney General has leave to amend the complaint to plead

9. Section 5752 of the Nonprofit Corporation Law, 15 Pa.C.S. § 5752.

10. Section 5306(a)(7) of the Nonprofit Corporation Law, 15 Pa.C.S. § 5306(a)(7).

11. *Id.*

sufficient facts to make out his cause of action within 30 days of the date of this Order.